863 So.2d 231 (2003)
THE FLORIDA BAR, Complainant,
v.
Bartley Charles MILLER, Respondent.
No. SC01-736.
Supreme Court of Florida.
October 2, 2003.
*232 John F. Harkness, Jr., Executive Director, and John Anthony Boggs, Staff Counsel, Tallahassee, FL; and Vivian Maria Reyes, Bar Counsel, Miami, FL, for Complainant.
Edmund M. Aristone, Jr., Fort Lauderdale, FL, for Respondent.
PER CURIAM.
We have for review a referee's report regarding alleged ethical breaches by Bartley Charles Miller. We have jurisdiction. See art. V, § 15, Fla. Const. For the reasons that follow, we approve the findings of the referee but decrease the sanction to a one-year suspension from the practice of law.

FACTS
Respondent Bartley Charles Miller (Miller) represented Dr. Roberta Santini (Santini) in an employment discrimination and sexual harassment action against Cleveland Clinic Florida. In 1997, Miller filed a complaint with the Equal Employment Opportunity Commission (EEOC) and the Broward County Human Rights Division on behalf of Santini against Cleveland Clinic. On or about January 27, 1998, the EEOC sent via certified mail a "Right to Sue Notice" (notice) addressed to Santini at her mother's residence. The notice informed Santini that the EEOC had investigated the charge and that Santini had ninety days from receipt of the notice to file a civil action in state or federal court. The notice, however, did not contain a date. Santini's mother signed for the notice. Santini received the notice by February 2, 1998, and faxed it to Miller's law firm.
On March 2, 1998, the EEOC sent Santini a second right to sue notice, which included the date it was mailed. On May 29, 1998, 116 days after Santini received the first notice and eighty-eight days after she received the second notice, Miller filed a complaint in federal court on behalf of Santini. Thus, the complaint would be considered untimely using the date Santini received the first notice but timely using the date Santini received the second notice.
On October 13, 1998, Miller and Santini attended Santini's deposition, at which Santini produced a file that contained only the second notice. The file purportedly contained all of the documents Santini received from the EEOC. Santini testified that she had not received the first notice. Cleveland Clinic thereafter moved for summary judgment, arguing that (1) Santini's federal claims were time-barred because she failed to file her complaint within ninety days from receipt of the notice, and (2) no basis existed for an equitable tolling of the statutory filing period. In response, Miller argued that the complaint had been timely filed because the ninety-day period did not begin to run until Santini had received the dated notice. In support of his argument, Miller attached the affidavits of Santini's mother, Elsa Santini; Heidi Friedman, a former associate attorney who had assisted Miller with this case; and Roberta Santini. Elsa Santini's affidavit stated that she was never authorized by her daughter to accept mail addressed to her daughter but sent to her address and that, at the time the first notice was sent, she was being medicated for depression and her caretaker often obtained her mail for her. Heidi Friedman's affidavit stated that she had represented Santini in *233 this action and that she never received the first notice, but she did receive the second notice. Roberta Santini's affidavit stated that her mother was not authorized to receive her mail and that she received the second notice.
The federal district court scheduled an evidentiary hearing on Cleveland Clinic's motion for May 21, 1999, and ordered Elsa and Roberta Santini and Heidi Friedman to appear. Miller told Roberta Santini that she was not required to attend this hearing. Elsa Santini testified at the hearing and acknowledged her signature on the return receipt of the first notice. She stated, however, that she had no memory of receiving the notice. Heidi Friedman was also present at the hearing, but Miller attempted to prevent her from testifying, arguing to the magistrate judge that her testimony was unnecessary. The magistrate judge disagreed, and Friedman testified that she had retrieved the firm's file prior to testifying and that the file contained the first, undated notice. The magistrate judge thereafter terminated the hearing to have Roberta Santini appear and scheduled a second evidentiary hearing for June 1, 1999.
At the June 1, 1999, hearing, Miller informed the court for the first time that he was abandoning his argument that Santini did not receive the first, undated notice. Santini testified that on or before February 2, 1998, she had received the first notice, which she faxed to Miller's office. Miller testified that he did not recall having received the first notice. Miller's handwritten time sheets, dated February 2, 1998, however, indicated that he in fact recorded thirty minutes expended on reviewing and following up on the first notice. The law firm's file also contained a memorandum written by Miller between February 2, 1998, and February 13, 1998, acknowledging receipt of the first notice and including a reminder to draft the complaint by February 13, 1998.
The federal district court granted Cleveland Clinic's motion for summary judgment. On appeal, the Eleventh Circuit Court of Appeals affirmed the district court's decision, holding as a matter of law that receipt of a second EEOC notice does not constitute grounds for equitable tolling where a party has actual knowledge of the first notice. Santini v. Cleveland Clinic Florida, 232 F.3d 823, 825 (11th Cir.2000).
On September 2, 1999, the federal court issued an order imposing sanctions on Miller for "concealing critical evidence, advancing spurious arguments, and submitting misleading affidavits and testimony." The court concluded that Miller engaged in a bad-faith course of deceit and ordered Miller to pay Cleveland Clinic its excess costs, expenses, and attorney fees incurred as a result of his concealing the first notice, pay into the registry of the federal court a fine of $1,000, and attend five hours of continuing education in the subject of legal ethics. The Eleventh Circuit Court of Appeals affirmed the district court's order. Santini v. Cleveland Clinic Florida, No. 01-11229, 32 Fed.Appx. 533, 2002 WL 369886 (11th Cir. Feb. 15, 2002). The Florida Bar subsequently filed the instant complaint against Miller based on his representation of Roberta Santini.
The referee recommended that Miller be found guilty of violating the following Rules Regulating The Florida Bar: 4-3.3(a)(1) (a lawyer shall not knowingly make a false statement of material fact or law to a tribunal); 4-3.4(a) (a lawyer shall not unlawfully obstruct another party's access to evidence or otherwise unlawfully alter, destroy, or conceal a document or other material that the lawyer knows or reasonably should know is relevant to a pending proceeding, or counsel or assist a witness to testify falsely); and 4-8.4(c) (a *234 lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation).
The referee found that Miller intentionally failed to disclose a crucial piece of evidence that he knew was the main focus of the legal proceeding and intentionally interfered with the legal process. The referee further stated that Miller had engaged in a pattern of deceit throughout the case and that he did not concede that he received the letter until he was exposed at the hearing before the magistrate judge. At that point, Miller nonetheless continued his evasive actions, failing to disclose to the magistrate judge that he had actually reviewed the January 1998 right-to-sue letter.
As aggravating factors, the referee considered the following: dishonest or selfish motive, pattern of misconduct, multiple offenses, refusal to acknowledge wrongful nature of his conduct, and substantial experience in the practice of law. The referee also considered the following mitigating factors: absence of a prior disciplinary record, excellent character and reputation, and Miller's sanction by the federal court arising from the same incident. The referee therefore recommended that Miller be suspended from the practice of law for two years and pay the Bar's costs of this proceeding.
Miller petitions this Court to review the referee's findings of fact and recommendations of discipline.

ANALYSIS
Miller first challenges the referee's findings of fact and conclusion of guilt. To succeed in challenging the referee's findings of fact and recommendation of guilt, Miller must establish that there is no evidence to support the referee's findings or that the record evidence clearly contradicts the referee's conclusions. Florida Bar v. Vining, 761 So.2d 1044, 1047 (Fla. 2000). Miller has not met this burden.
Miller argues that the Bar failed to prove at the disciplinary hearing that Miller violated any of the Rules of Professional Conduct. Miller argues that his conduct was well within the law, primarily because he believed he had no duty to produce the first notice during discovery.[1] We reject Miller's contention and find that the referee's findings of fact and conclusions of guilt are supported by competent, substantial evidence. Whether Miller believed he had a duty to produce the document during discovery is irrelevant to the Bar's complaint and the referee's findings in this case. The record shows that Miller deliberately concealed that he was aware of the existence of the first notice. In so doing, Miller intentionally deceived the federal court by arguing that he had no knowledge of the first notice, filing affidavits to this effect, and permitting witnesses to testify in a way that created an impression that neither Miller nor Santini received the first notice. He maintained this argument until Heidi Friedman testified, over his objections, that the law firm's file contained the first notice. Moreover, Miller's law firm records established that as early as February he was in fact aware of the existence of the first notice, reviewed it, and intended to draft a timely complaint. *235 The record also reveals that Miller was reminded of the existence of the first notice in April, prior to the first evidentiary hearing during which Miller argued that he had no knowledge of the first notice. The record shows that Miller engaged in an intentional, prolonged pattern of deceit. We therefore approve the referee's findings of fact and conclusions of guilt.
Miller's second claim is that the referee's recommended discipline is too severe. The referee recommended that Miller be suspended from the practice of law for two years. Miller contends that existing case law and the Standards for Imposing Lawyer Sanctions support only a public reprimand for his conduct.
In reviewing a referee's recommended discipline, this Court's scope of review is broader than that afforded to the referee's findings of fact because it is ultimately our responsibility to order the appropriate sanction. See Florida Bar v. Anderson, 538 So.2d 852, 854 (Fla.1989); see also art. V, § 15, Fla. Const. However, generally speaking, this Court will not second-guess the referee's recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. See Florida Bar v. Temmer, 753 So.2d 555, 558 (Fla.1999). We reject Miller's argument that his conduct warrants only a public reprimand. We find Miller's continuous and intentional pattern of deceit particularly more egregious than the circumstances under which we have approved a public reprimand.
Florida Standard for Imposing Lawyer Discipline 6.12 provides that suspension is appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld and takes no remedial action. See also Fla. Stds. Imposing Law. Sancs. 6.22 (suspension appropriate for knowingly violating a court order or rule, causing injury to client or interfering with a legal proceeding); 7.2 (suspension appropriate for knowingly engaging in conduct in violation of a duty owed as a professional, and causing injury to a client or the legal system). This Court has repeatedly suspended attorneys for conduct similar to the instant case. See Florida Bar v. Cox, 794 So.2d 1278 (Fla.2001) (suspending attorney for one year for presenting false testimony and concealing the identity of a witness); Florida Bar v. Hmielewski, 702 So.2d 218 (Fla.1997) (suspending attorney for three years for knowingly concealing material evidence, making false representations to the court, and presenting false evidence); Florida Bar v. Broida, 574 So.2d 83 (Fla. 1991) (suspending attorney for one year for misrepresenting facts to the court, repeatedly attempting to delay proceedings, personally attacking the integrity of multiple lawyers and judges, and raising frivolous claims).
We reject, however, the referee's recommendation that a two-year suspension is the appropriate discipline in this case. In light of the fact that Miller has no prior discipline and was sanctioned by the federal court based on the same conduct, we decrease the referee's recommendation to a one-year suspension from the practice of law. We conclude that discipline consistent with the discipline ordered in Cox is appropriate. However, we caution that we consider Miller's violations to be very serious, thus warranting this suspension, which will require that Miller prove rehabilitation before the suspension is terminated. See Rules Reg. Fla. Bar 3-5.1(e).
Miller's final claim is that the referee erred by permitting the Bar to draft the proposed report in this case. We disagree. The comment to Canon 3(B)(7) of *236 the Florida Code of Judicial Conduct provides that "[a] judge may request a party to submit proposed findings of fact and conclusions of law, so long as the other parties are apprised of the request and are given an opportunity to respond to the proposed findings and conclusions." The referee in this case did not act improperly by considering the proposed report submitted by the Bar.
Respondent further argues, however, that he was not given an opportunity to respond to the Bar's proposed report. The record in this case reveals that this argument was not raised to the referee in the proceeding below. Miller therefore failed to preserve this issue for review in this Court. Moreover, Miller has failed to provide any record support for his assertion that he was not given the opportunity to respond to the Bar's proposed report.

CONCLUSION
Bartley Charles Miller is hereby suspended from the practice of law for a period of one year. The suspension will be effective thirty days from the filing of this opinion so that Miller can close out his practice and protect the interests of existing clients. If Miller notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Miller shall accept no new business from the date this opinion is filed until he is reinstated. Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399, for recovery of costs from Bartley Charles Miller in the amount of $990, for which sum let execution issue.
It is so ordered.
NOTES
[1] Miller also continues to argue that the first notice was invalid because it was undated. He presented testimony to this effect at the disciplinary hearing. Miller's argument, however, ignores the holding of the Eleventh Circuit Court of Appeals that receipt of the second notice did not constitute grounds for equitable tolling because Miller had actual knowledge of the first notice. Thus, the court found that the first notice was in fact valid. Moreover, Miller did not argue the notice's invalidity to the federal court. He instead repeatedly argued that he had not received the first notice.