938 So.2d 496 (2006)
THE FLORIDA BAR, Complainant,
v.
KAYO ELWOOD MORGAN, Respondent.
No. SC04-1438.
Supreme Court of Florida.
June 22, 2006.
John F. Harkness, Jr., Executive Director and John Anthony Boggs, Staff Counsel, The Florida Bar, Tallahassee, Florida and Michael David Soifer, Bar Counsel, Fort Lauderdale, Florida, for Complainant
Fred Haddad, P.A., Fort Lauderdale, Florida, for Respondent
PER CURIAM.
We have for review a referee's report regarding alleged ethical breaches by Kayo Elwood Morgan. We have jurisdiction. See art. V, § 15, Fla. Const.
For the reasons that follow, we approve the referee's findings and recommendation of a ninety-one-day suspension.

Facts and Recommendations
The Florida Bar filed a complaint against Morgan alleging he violated several of the Rules Regulating the Florida Bar by inappropriate courtroom behavior. A referee was appointed. After holding a hearing, the referee issued a report making detailed findings, summarized below.
Morgan represented a felony defendant in a circuit court trial. During the cross-examination of a prosecution witness, Morgan asked the witness how she was dressed on the occasion in question. The prosecution objected to the relevancy of the question. The court sustained the objection. At that point Morgan raised his voice and told the judge he did not understand why the judge was interfering with his cross-examination. This exchange occurred in front of the jury. The judge excused the jury. Morgan continued to speak in a loud and angry manner and to pace back and forth. The following exchange took place:
The Court: Mr. Morgan, I want you both to
Mr. Morgan: I am moving for a mistrial.
The Court: Mr. Morgan, I am not going to
Mr. Morgan: Don't treat me like that in front of a jury.
The Court: I sustained an objection, and you
Mr. Morgan: No judge treats me like that, in front of a jury.
The Court: I heard the way you treat other judges, and I don't appreciate it.
Mr. Morgan: I don't care how you think I treat other judges. You don't treat me  you treat me with respect. I treat you with respect. I don't care what you think about other judges.
The Court: Please come up, kindly. Please come up, sir.
Mr. Morgan: No, I'm staying right here.
The Court: I think you are out of line, sir.
Mr. Morgan: I think you are out of line. That's what I think. You don't talk to me like that in front of a jury.
The Court: You don't have to talk any further. Are you going to continue? I sustained the objection, for the record.
Mr. Morgan: Wait a minute.
The Court: If you continue we will have a contempt hearing. I don't want to go through this again.
Mr. Morgan: I object.
The Court: You are not going to pull stuff in my court without being receiving 
Mr. Morgan: So you think I am pulling something on you, Judge Glare?[1]
The Court: I think you are not respectful. I've never heard anyone
Mr. Morgan: You are not respectful to me.
The Court: I have sustained an objection. I don't want you to talk for one moment. I am controlling this courtroom. I am the judge here.
Ultimately, the trial court agreed to let Morgan make a proffer. During Morgan's questioning of the witness during the proffer, the prosecution objected that the proffer exceeded the scope of the subject of the proffer, which the judge sustained. At that point, the following exchange occurred:
[The Prosecutor]: Judge, now it's gone beyond the proffer. It's gone beyond the item of clothing.
The Court: I don't know what he is doing.
Mr. Morgan: Now, wait a minute.
The Court: I have already ruled.
By Mr. Morgan:
Q. Were you dressed properly for the inside of that bar?
The Court: Hold it, one second.
The Witness: Yes.
The Court: Hold it. I have ruled.
By Mr. Morgan:
Q. How do you know?
The Court: I want you to stop now. What's the matter with you?
Mr. Morgan: She answered something.
The Court: I am the judge here. Now, you continue, I am going to have you arrested.
Mr. Morgan: Go ahead and have me arrested. What are you threatening me for? I want a mistrial. Take me to jail and let's go with it. I want my mistrial. You don't talk to me like this. It's not going to happen.
The Court: Mr. Morgan?
Mr. Morgan: No, I am not going to be talked to like that, by you or anyone else, when I'm defending somebody in a felony case. It's not going to happen.
The Court: You are out of line. I don't want to hear anything further, here.
Mr. Morgan: Well, I move for a mistrial.
The Court: What you want to do?
Mr. Morgan: You are prejudice [sic].
The Court: And you are obnoxious.
Mr. Morgan: So what?
The Court: You can't be obnoxious in a courtroom to a judge.
Mr. Morgan: You are obnoxious to me.
The Court: I don't want to talk with you any further. You are not going to get me excited, sir.
Based on the facts above, the referee found Morgan violated rules 4-3.5(c) (conduct intended to disrupt tribunal) and 4-8.4(d) (conduct prejudicial to the administration of justice) of the Rules Regulating the Florida Bar. He further found several aggravating factors, including prior disciplinary offenses, a pattern of misconduct, a refusal to acknowledge the wrongful nature of his conduct, and substantial experience in the practice of law. Morgan has been disciplined twice before for similar misconduct. The first time he was publicly reprimanded for making several intemperate or derogatory remarks to and about the judiciary in 1995 and 1996. See Fla. Bar v. Morgan, 717 So. 2d 540 (Fla. 1998). The second time he was suspended for ten days for making statements that he knew were false or with reckless disregard of their truth or falsity about the qualifications or integrity of a judge in January 2000. He was also ordered to complete the Bar's ethics school. See Fla. Bar v. Morgan, 791 So. 2d 1103 (Fla. 2001).
In mitigation, the instant referee considered Morgan's character and reputation, noting that Morgan has provided pro bono legal services, has served as a role model for an assistant state attorney, and is perceived by two judges and an attorney as an excellent and passionate advocate.
As to discipline, the referee recommended a ninety-one-day suspension, which would require Morgan to establish rehabilitation before he could return to the practice of law.[2] Morgan petitioned for review, arguing that the recommended sanction is too severe.

Analysis
Because it is ultimately the Court's responsibility to order the appropriate sanction, we review a referee's recommendation as to discipline of an attorney more broadly than the referee's findings of fact and recommendations as to guilt. Fla. Bar v. Miller, 863 So. 2d 231, 235 (Fla. 2003); Fla. Bar v. Anderson, 538 So. 2d 852, 854 (Fla. 1989); see also art. V, § 15, Fla. Const. However, the Court generally will not second-guess the referee's recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. Fla. Bar v. Miller, 863 So. 2d 231, 235 (Fla. 2003); Fla. Bar v. Temmer, 753 So. 2d 555, 558 (Fla. 1999).
Morgan points to the facts that the conduct occurred outside the presence of the jury and that the trial judge did not hold him in contempt or lodge a complaint against Morgan with the Bar. Morgan further argues that the referee gave insufficient weight to the mitigating evidence and too much weight to the aggravating evidence. He maintains his conduct was not as egregious as the conduct seen in cases where a ninety-one-day rehabilitative suspension was imposed.
Contrary to Morgan's argument, a ninety-one-day suspension has a reasonable basis in existing case law and the standards. Standards 6.22 (providing that a suspension is appropriate for knowingly violating a court order or rule, causing injury or potential injury to a client or party) and 7.2 (providing that a suspension is appropriate for knowingly engaging in the violation of a professional duty, causing injury or potential injury to a client, the public, or the legal system), which the referee cited, support the imposition of a suspension. Standard 8.1 even supports disbarment. That standard provides that disbarment is the appropriate discipline when a lawyer "has been suspended for the same or similar misconduct, and intentionally engages in further similar acts of misconduct."
Morgan was disciplined twice before for similar misconduct. The first time, he was publicly reprimanded; the second time, he was suspended. See Fla. Bar v. Morgan, 791 So. 2d 1103 (Fla. 2001) (suspending Morgan for ten days followed by probation with conditions); Fla. Bar v. Morgan, 717 So. 2d 540 (Fla. 1998) (publicly reprimanding Morgan).
In determining the appropriate discipline, this Court considers prior misconduct and cumulative misconduct, and treats more severely cumulative misconduct than isolated misconduct. . . . Additionally, cumulative misconduct of a similar nature warrants an even more severe discipline than might dissimilar conduct.
Fla. Bar v. Vining, 761 So. 2d 1044, 1048 (Fla. 2000) (citations omitted); see also Fla. Bar v. Carlon, 820 So. 2d 891, 899 (Fla. 2002). Thus, this is Morgan's third time appearing before the Court for the same kind of misconduct. His repeated misconduct therefore warrants the next level of available disciplinea rehabilitative suspension. We also warn that if he appears before this Court once again for similar misconduct, we may find it necessary to apply standard 8.1 and disbar him.
The cases the Bar cites, Florida Bar v. Wasserman, 675 So. 2d 103 (Fla. 1996), and Florida Bar v. Price, 632 So. 2d 69 (Fla. 1994), also support the imposition of a ninety-one-day rehabilitative suspension. In Wasserman, we suspended an attorney for six months in each of two cases involving conduct evidencing disrespect toward the judiciary. The attorney in Wasserman had been publicly disciplined on three prior occasions. Further, the attorney there admitted his behavior was inappropriate, but nevertheless seemed to feel his conduct was justified by a heavy caseload or excused as theatrics.
Like the attorney in Wasserman, Morgan admits his conduct was inappropriate, but seems to believe it is his obligation as a zealous advocate to take a judge "to task" if he comes to believe he or his client is being treated unfairly.
Having found support for the referee's recommendation in existing case law and the standards for lawyer discipline, we approve the recommendation.

Conclusion
Kayo Elwood Morgan is hereby suspended from the practice of law for ninety-one days and thereafter until he has shown proof of rehabilitation. The suspension will be effective thirty days from the filing of this opinion so that Morgan can close out his practice and protect the interests of existing clients. If Morgan notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Morgan shall accept no new business from the date this opinion is filed until he is reinstated.
Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida XXXXX-XXXX, for recovery of costs from Kayo Elwood Morgan in the amount of $2,117.77, for which sum let execution issue.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
WELLS, J., specially concurs with an opinion.
NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.
WELLS, J., specially concurring.
I concur in the majority decision and the majority opinion. I write to emphasize my belief that the conduct by Mr. Morgan that is reflected in the transcript of the trial proceedings set out in the majority opinion is so detrimental to the administration of justice that lawyers who engage in it must be subject to rehabilitative suspension.
From my experience as a long-time litigator, I understand that there can be frustrations on the part of litigators in dealing with some judges[3] in the processing and trial of cases. I understand that there can be heat-of-battle impulses to vent those frustrations, but I also recognize that we have processes through which lawyers' frustrations with judges must be directed. Obviously, we have the constitutional right of appeal to deal with a judge's legal errors. We have the Judicial Qualifications Commission, which is open to receive complaints from lawyers or their clients concerning any violation of the Code of Judicial Conduct. Finally, we have elections at the trial court level in which judges can be challenged.
What is absolutely not available to a lawyer, either out of frustration or as a trial tactic, are in-court acts which demonstrate or give the appearance of a lawyer's disrespect for the judge in a case. Integral to our system of justice is respect for court judgments. The system can only function when all involved at the end of a case are committed to abiding by what has been finally judged. This requires that in a particular case that the judge who makes that judgment be treated with respect.
It is a Florida lawyer's oath-sworn duty to respect and protect the courts. It is likewise a lawyer's duty to make the court system work for the people of this state, who each one depend upon it in so many ways.
The conduct of Mr. Morgan was an anathema to a properly functioning court system. The lesson of this decision is that the Court will not allow lawyers who engage in this conduct to do it in Florida courts without facing substantial discipline.
NOTES
[1] The trial court judge's name was not Glare.
[2] Neither party challenges the referee's findings of fact or recommendations as to guilt, which we approve without comment.
[3] It does not appear from the transcript of the trial in which Mr. Morgan engaged in his conduct that the trial judge did anything which could have reasonably provoked Mr. Morgan's frustration and conduct.